IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:04-CR-0192-RWS |
| JOHN HENRY MOORE, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

This case is before the Court for consideration of Defendant's Motion to Withdraw Plea [29]. After conducting a hearing on the Motion and considering the evidence presented at the hearing as well as arguments of counsel, the Court enters the following Order.

**Factual Background**

Defendant is charged in a one count Indictment with bank robbery in violation of 18 U.S.C. § 2113 (a). At a June 29, 2004 plea hearing (the "plea hearing"), Defendant appeared before the Court and entered a plea of guilty. During the plea hearing, Assistant United States Attorney, Robert C. McBurney,

was asked to state the elements of the offense to which Defendant was pleading guilty.  In response, Mr. McBurney stated:

> Judge, there are four.  The first is that the Government would need to show that Mr. Moore took property that belonged to or was in the care and custody of South Trust Bank.  Second, the Government would need to show that Mr. Moore did so from the person and presence of another.  It's not a theft, it's a robbery.
>
> Third, the Government would need to show that Mr. Moore did so either through force and violence or by intimidation.  And finally, we would need to show that the bank was federally insured, FDIC insured.  Those are the four elements.

(PHT- 6).[1]

The Court then asked the following question of Defendant:

> Q. Mr. Moore, first of all, do you understand what the Government would have to prove to convict you at trial?
>
> A. Yes, sir.

(PHT-8).

At the plea hearing, the Court also asked Mr. McBurney to briefly summarize the evidence that the Government would expect to present at trial to prove the charge against Defendant.  In response, Mr. McBurney stated:

---

[1] The plea hearing transcript will be referred to as "PHT."

2

The evidence would show that on March 10th of this year, 2004, Mr. Moore entered South Trust Bank at 230 Peachtree Street, it's here downtown by the Americas Mart. He was wearing at least one hooded sweatshirt. The hood was pulled over his head, pulled down tight. He was wearing dark sunglasses.

He approached a teller, presented that teller with a note saying, I've got a gun, give me your 50s and hundreds. At no time did Mr. Moore display a gun, but the note said, I've got a gun.

The teller gave him money, apparently wasn't moving quickly enough; so at one point Mr. Moore said, hurry, hurry. She gave him money. In the stack of bills there was a dye pack. Mr. Moore, who wasn't recognized by anyone at the time as a robber, left the bank and traveled to a restroom in the Americas Mart right next door.

At some point between the bank and the Americas Mart, the dye pack exploded in the restroom, the men's restroom at the Americas Mart. A patron entered the restroom and saw the person who turned out to be Mr. Moore standing on the counter of the restroom where the sinks are, doing something with a ceiling panel. This person who would testify wasn't sure whether Mr. Moore was putting a bag up there or getting a bag down.

He contacted Americas Mart security. They detained Mr. Moore until the police arrived. The police patted Mr. Moore down. Inside a separate hooded sweatshirt, this one was white that was also covered with dye, was the 330 and some odd dollars taken from the bank.

That's the evidence. It would come through eyewitness testimony. The bank teller wouldn't be able to identify Mr. Moore but would describe what happened. The person in the restroom would be able to identify Mr. Moore. Through the officers who detained Mr.

AO 72A
(Rev.8/82)

>   Moore, he was taken into custody at that time.  And the evidence would also show that South Bank Trust was and is FDIC insured.

(PHT6-8).

The following colloquy then occurred between the Court and Defendant:

Q. And you've heard a description of the facts by Mr. McBurney.  Do you agree with the facts as he has stated them?

A. Somewhat, yes.

Q. Let me ask you this: Do you admit that you went into the bank and passed the note that he described to the teller?

A. Yes, sir.

Q. And that she did, in fact, give you money as a result of you giving her that note?

A. Yes, sir.

Q. And you left the bank with the money?

A. Yes, sir.

Q. Do you admit that was not money that you were authorized to have?

A. Yes, sir.

Q. And did the note state essentially what Mr. McBurney said?

A. Can I talk to him?

4

Q.     Something to the effect - - okay, you may.

(Discussion off the record between the Defendant and his counsel.)

A.     Yes, sir.

(PHT-8-9).

At the conclusion of the plea hearing, the Court found "that the Defendant does understand the charge and the consequences of his plea of guilty." (PHT-13). The Court went on to find that the plea "is voluntarily made with full knowledge of the charge against him and the consequences of his plea." (PHT-14).

Thereafter, the Probation Office completed a Presentence Report and sent a copy to Defendant and his counsel. In the Report, Defendant was treated as a career offender. Defendant and his attorney, David R. MacKusick discussed possible objections to the Presentence Report. Substantial disagreement developed between Mr. MacKusick and Defendant concerning their response to the Presentence Report. As a result of their disagreement, Mr. MacKusick moved to withdraw from the case. The Court conducted a hearing and granted Mr. MacKusick's Motion to Withdraw.

Thereafter, attorney Howard Manchel was appointed to represent

5

Defendant. Mr. Manchel filed a motion to withdraw the plea of guilty on behalf of Defendant.

At the hearing on Defendant's Motion to Withdraw Plea, Defendant testified that he advised Mr. MacKusick before his plea that he "never used force, violence or intimidation when [he] went inside the bank." (T-11).[2] He testified that during the plea colloquy, he asked to speak to his attorney at one point because he wanted to ask his attorney if the reference to "violence, force and intimidation" should be withdrawn from the indictment. (T-12). Defendant also testified that Mr. MacKusick never discussed the elements of the bank robbery offense with him before he went to court to enter his guilty plea. (Id.). Defendant also testified that he told Mr. MacKusick that he "didn't write 'I have a gun' in the note." (T-13). Defendant testified that he asked Mr. MacKusick to withdraw his plea within a couple of days after he entered the plea. (Id.). Defendant wishes to withdraw his plea so that he can explore a plea to a larceny charge. (T-14).

Defendant and Mr. MacKusick had discussed his career offender status

---

[2]The transcript of the hearing on Defendant's Motion to Withdraw Plea will be referred to as "T."

6

before the plea.  Mr. MacKusick had advised Defendant that he believed Defendant would be a career offender.  (T-11).  However, Defendant felt that he would not be a career offender because his earlier bank robbery conviction was too old.  (T-17).  Also, he believed he would not be treated as a career offender if the present offense were treated as a larceny instead of a bank robbery.  (Id.).  The idea of treating the offense as a larceny did not arise until after Defendant received a copy of the Presentence Report.  (T-17-19).  On cross-examination, Defendant also admitted that he did not raise the issue of withdrawing his plea until he received the Presentence Report.  (Id.).

Mr. MacKusick also testified at the hearing.  He stated that he and Defendant had substantial arguments while Mr. MacKusick was representing Defendant.  (T-21).  Before his plea, Mr. MacKusick told Defendant that, in his opinion, Defendant would be treated as a career offender based on his two prior bank robberies.  (T-27).  Mr. MacKusick's recollection of their discussions about the note used in the bank robbery centered on Defendant's concern that the Government did not have the note.  (T-28-29).  As for the contents of the note, Mr. McKusick advised Defendant that the Government had a bank teller willing to testify about the contents of the note.  (T-29).  Defendant did not

7

challenge the actual contents of the note until after the Presentence Report was received.  (T-30-31).   Mr. McKusick admitted that he and Defendant never discussed the possibility of a larceny charge, because he did not believe the evidence was consistent with larceny.   (T-30).  Mr. MacKusick and Defendant discussed the guidelines "in great length" before the plea. (T-33).  Mr. Mackusick also testified that he would have gone over the elements of the offense of bank robbery with Defendant. ( T-34).

## **Discussion**

"A defendant may withdraw a plea of guilty. . .after the court accepts the plea, but before it imposes sentence if. . .the defendant can show a fair and just reason for requesting the withdrawal."  Federal Rules of Criminal Procedure 11(d)(2)(B).

> In determining whether the defendant has met this burden, the district court may consider the totality of the circumstances surrounding the plea.  Factors analyzed include (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea.  The good faith, credibility, and weight of a defendant's assertions in support of a motion under Rule 32 (d) are issues for the trial court to decide.

United States v. Buckles, 843 F. 2d 469, 471-72 (11th Cir. 1988).

Defendant asserts that his plea was not knowing and voluntary. The bases of this contention are (1) the note given to the bank teller did not mention a gun and, therefore, the crime was not a crime of violence and (2) Defendant's attorney should have discussed with him the possibility of a plea to bank larceny as opposed to bank robbery.

As to the first ground asserted by Defendant, the Court finds, based on the evidence presented at the hearing, that Defendant has failed to establish this ground . Defendant was afforded able assistance of counsel for the entry of his plea. Before the plea hearing, Counsel reviewed with Defendant the elements of the offense to which he was pleading, including the requirement that the robbery was committed by force and violence or by intimidation. The Court reviewed the elements with Defendant during the plea hearing, and Defendant acknowledged that these were the elements of the offense to which he was pleading. Defendant admitted the facts supporting the elements of the offense, including the contents of the note. Furthermore, the Government represented that the teller who received the note would testify that the note passed to her by Defendant included the statement that he had a gun.

Defendant's claim that he raised questions with counsel about the contents of the note during the plea hearing is not credible. First, as stated above, Defendant was advised of the elements of the offense which he acknowledged and the contents of the note which he admitted during the colloquy. The Court finds, based on the testimony, that the focus of Defendant's discussion with his counsel during the break in the colloquy concerned the absence of the note rather than the content of the note. Defendant's discussions with counsel prior to the plea had focused on the Government not having the note, not the contents of the note. Defendant had not raised the issue of the note's language with counsel. After seeing the consequences of his plea upon receipt of the Presentence Report, Defendant now seeks to retract his admissions during the plea colloquy. The Court finds, as it did at the plea hearing, that Defendant understood the elements of the offense to which he was pleading and admitted facts supporting each of the elements of that offense. The Court further finds that Defendant was not mislead by counsel at any time during this process.

As to Defendant's second ground, the Court finds that Defendant's counsel should not have been expected to discuss an alternative

10

charge of larceny with him.  First, there is absolutely no evidence that the State would have considered a plea to such a charge.  Further, while the benefits of going to trial and being convicted of misdemeanor larceny instead of bank robbery are substantial, the likelihood of the success of such a tactic is so remote counsel cannot be faulted for failing to explore the alternative.  Although Mr. MacKusick had warned Defendant that he faced being treated as a career offender and Defendant entered his plea with this knowledge, Defendant apparently did not fully accept this reality until he saw the Presentence Report.  Defendant's failure to accept that reality when presented with it by his counsel before he entered his plea of guilty is not a justification for the withdrawal of the plea of guilty.

Based on the totality of the circumstances, the Court finds that Defendant has failed to show a fair and just reason for withdrawing his plea.  Therefore, Defendant's Motion to Withdraw Plea [29] is hereby **DENIED**.

**SO ORDERED** this   14th   day of November, 2005.


/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

11

AO 72A
(Rev.8/82)